# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| Rayshawn Ogletree, | : | Case No. 1:07CV2816 |
| | : | |
| Petitioner | : | Judge Donald C. Nugent |
| | : | |
| v. | : | Magistrate Judge David S. Perelman |
| | : | |
| Stuart Hudson, Warden, | : | |
| | : | **REPORT AND RECOMMENDED** |
| | : | **DECISION** |
| Respondent | : | |

In this action in habeas corpus, 28 U.S.C. §2254, petitioner challenges the constitutionality of his May 3, 2005 conviction pursuant to a jury trial of one count of murder with a firearm specification; three counts of aggravated robbery, with firearm specifications; one count of aggravated burglary with specifications; and one count of engaging in a pattern of corrupt activity; upon which he was sentenced to an aggregate term of eighteen years to life in prison.

On June 7, 2005 the petitioner, acting through new counsel, appealed his convictions to the Ohio Eighth District Court of Appeals, alleging one assignment of error:

> I.. The record contains insufficient evidence to support Mr. Ogletree's conviction as a matter of law and the conviction was against the manifest weight of the evidence.[1]

---

[1] The appellate court considered this claim to be two separate claims for relief.

The facts in petitioner's criminal case were summarized by the state appellate court in pertinent part as follows:

> Ogletree was indicted on one count of murder, six counts of aggravated robbery, two counts of aggravated burglary, and one count of engaging in a pattern of corrupt activity. With the exception of the count involving corrupt activity, all of the counts carried one- and three-year firearm specifications. The indictment arose from a series of events on the west side of Cleveland that began with the robbery of the Elbireh Society on February 3, 2004 and ended February 9, 2004 with the murder of Peter Koutsoulias at Dimitri's Restaurant.
>
> The evidence presented at trial demonstrated that Greg Reinke, a crack addict with a $300 a day habit, bought crack from Ogletree and Ogletree' cousin, co-defendant John Dawson, who would extend Reinke credit for his purchases. Reinke stole money from various businesses and persons to pay off his debt. His petty theft offenses escalated, however, after Ogletree and Dawson supplied him with a 9 mm. automatic handgun to use during the robberies.
>
> Reinke, who reached a plea agreement with the State in exchange for his testimony, testified that during the first week of February 2004, he was high most of the time, and slept only three to four hours a day. During this time, he robbed the Elbireh Society three times, a Rite Aid store, West End Lumber, a man on the street, and the My Friends Deli. Dawson would give him the gun before each robbery. When the robbery was completed, Reinke would return the gun and divide the money between Ogletree, Dawson, John Rowe (a friend of Ogletree's and Dawson's), Reinke's girlfriend Tiaisha Ogletree, and himself. Reinke testified that he would use his money to pay his debt to Ogletree and Dawson, but would then immediately get more crack from them on credit.
>
> According to Reinke, on February 8, 2004, he and Ogletree talked about "hitting a lick"(Fn 1) at Dimitri's Restaurant the next day. Reinke and Tiaisha smoked some crack on the morning of February 9, 2004, and then Tiaisha called Ogletree, who came to the apartment with Rowe. Reinke testified that he became paranoid while Ogletree was getting the gun ready, so he left the apartment. Ogletree and Rowe picked him up a few minutest later as he was walking down the street.
> Fn 1 A "lick" is a robbery.

2

Reinke testified that he got in the car and they drove to Dimitri's. They parked on a side street near the restaurant, Ogletree gave him the gun, and he got out of the car.

Reinke testified that he looked in the window as he walked past Dimitri's and thought, "it don't look right, there's a lot of people in there." He walked across the street to Murray's Auto Parts, pulled the gun on a woman at the register, and told her to give him all of the money. She was unable to open the register, however, so he ran out of the store and back across the street to Dimitri's.

In Dimitri's, he asked a female clerk at the counter for a soda pop. When she went to the cash register to take his money, Reinke pulled out the gun and said, "Give me all the money." The woman reached under the cash register and pulled out a box that contained only loose change. Reinke testified that he then again told the woman to open the register. When she did, he saw that there were only a few bills in the register, so he picked up the register tray and looked in the register for more money. There was no money under the tray, however, so Reinke decided to leave.

According to Reinke, "I'm on my way out the door. I'm backing up out the door and I pulled the door open. And as I'm about to walk out, is when Mr. Koutsoulias came running from the side of the– from the restaurant, and I shot him."

Reinke testified that he ran back to the car, which Ogletree was now driving. After Rowe let him in the car, Reinke told them that he thought he had just killed someone. Reinke testified that he gave the gun back to Ogletree, who examined the gun and determined that four bullets were missing. Reinke took approximately $60 for himself, and gave Ogletree and Rowe $100 each.

Ogletree drove to his aunt's house and he and Rowe went inside the house. Reinke testified that he was not invited in, so he walked down the street a short way, but then went back to the house and knocked on the door. When Ogletree answered, Reinke told him that he wanted a "50 block" of crack. Ogletree came outside and spit a $50 rock of crack on the ground; Reinke gave Ogletree the money and walked away.

Rowe, who also testified in exchange for his plea, testified that on February 9, 2004, Ogletree called him and asked him to "take me to hit a lick with white boy." Rowe agreed. After picking up

3

Ogletree, they drove to the apartment where Reinke lived with Tiaisha, Dawson and Dawson's mother. Rowe testified that while they were in the apartment, he saw Ogletree load a 9mm. gun and then tape the clip because it was broken.

Rowe testified that he, Ogletree and Reinke got in his car and drove around. He could not remember whether Ogletree or Reinke gave him directions, but eventually he stopped the car as directed, and Reinke got out. According to Rowe, Ogletree handed Reinke the gun and told him, "Don't kill nobody" and "hurry up." Rowe saw Reinke put the gun in the waistband of his pants.

Rowe testified that Ogletree then switched places with him so that he could drive, and they waited in the car for approximately 10 minutes until Reinke returned. After Reinke got in the car, he told Ogletree and Rowe, "I think I killed somebody." Reinke gave the gun back to Ogletree, who examined it and saw that four shells were missing. According to Rowe, Ogletree "was like 'damn.'"

On May 11, 2006 the state appellate court affirmed the judgment of conviction and sentence.[2]

On July 3, 2006 petitioner appealed the state appellate court ruling to the Ohio Supreme Court alleging the following two propositions of law:

> **Proposition of Law No. I:** Ineffective assistance of trial counsel. Appellant's trial counsel was ineffective for the following reasons.
>
> A) Counsel never advised or informed Appellant of his absolute right to speedy trial.
>
> B) Counsel never introduced evidence given to him by Appellant to wit:
>
>> 1) Letters from the State's witness, Greg Reinke stating he knew Appellant had nothing to do with these crimes and the Prosecuting Attorney and police made him change his statement several times.
>
> **Proposition of Law No. II:** Ineffective assistance of appellate counsel. Appellate counsel was ineffective fore the following

---

[2]The judgment was not journalized until May 22, 2006.

4

>reasons:
>
>A) Appellate counsel failed to contact or correspond with Appellant concerning trial strategy or issues presented for appellate review.

On October 18, 2006 the state supreme court denied petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question. Petitioner did not appeal this decision to the United States Supreme Court.

While petitioner's appeal to the state supreme court was pending, on August 21, 2006 he filed a timely Rule 26(B)(2) application to reopen his appeal in which he asserted ineffective assistance of appellate counsel as a consequence of counsel's decision to challenge his conviction for murder without challenging his other convictions. The court denied the application on October 24, 2006, ruling that the ineffective assistance of appellate counsel claim was barred by res judicata, in light of the fact that petitioner could have raised it in his appeal to the state supreme court but failed to do so. As an alternative position, the court also held that his appellate counsel's representation was not constitutionally deficient and that petitioner had failed to articulate how his appeal would have been decided differently if his counsel had challenged the other convictions. Petitioner did not appeal that ruling to the state supreme court.

On September 18, 2007 the petitioner filed the instant petition, in which he raises the following three claims for relief:

>**A. GROUND ONE:** INSUFFICIENT EVIDENCE
>
>**Supporting FACTS:** The evidence presented by the State did not comport to the sufficient [sufficiency] requirements necessary to sustain the jury's verdict. The evidence was wholly lacking in the necessary elements contained in the indictments as prescribed by law and the United States Constitution of this States and the United States.

5

**B. GROUND TWO:** PETITIONER'S RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED HIM BY THE 6TH AMENDMENT OF THE UNITED STATES [CONSTITUTION] WAS DENIED HIM DURING TRIAL.

**Supporting FACTS:** Trial counsel failed in several key areas of his duties. Counsel did not explore any alternative evidence or contact certain witnesses that may have altered the States version of events and the circumstances surrounding same.

Further, the record supports petitioner's efforts to have new Counsel appointed him prior to the start of his trial because of counsels lack of interest in pursuing petitioners claim of innocence.

**C. GROUND THREE:** PETITIONERS RIGHTS TO THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL WAS DENIED HIM WHEN COUNSEL FAILED TO PRESENT SUFFICIENT ARGUMENT IN SUPPORT OF HIS CLAIM. (6TH AMENDMENT)

**Supporting FACTS:** Appellate counsel, was totally lacking in his arguments to the courts on his ONE CLAIM for review. This Counsel merely rehased [rehashed] the same arguments that he presented in several other briefs raising the SAME claim and assignment of errors in spite of the evidence circumstances being totally different in each case. Appellate Counsel failed to completely argue essential elements contained in subsequent indictments relating to his conviction.

The provisions of the Antiterrorism and Effective Death Penalty Act, "AEDPA," Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 26, 1996) are controlling herein as the instant petition was filed after the Act's effective date. <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997).[3]

At the outset the respondent argues that the petitioner's first and second claims for relief are procedurally defaulted.

---

[3]There are no issues of untimeliness in this case.

6

The exhaustion doctrine requires that before filing a petition in federal habeas corpus a defendant must utilize all available state remedies, through a motion or petition for review by the state's highest court, by which he/she may seek relief based upon an alleged violation of constitutional rights. Granberry v. Greer, 481 U.S. 129, 133 (1987). Under the exhaustion doctrine a petitioner must "fairly present" each federal constitutional claim to the state courts before seeking relief in federal court. Baldwin v. Reese, 541 U.S. 27 (2004); Hannah v. Conley, 49 F.3d 1193, 1196 (6th Cir. 1995). In so doing, state courts are afforded "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

Fair presentation of the factual and legal basis for a federal constitutional issue to the state's courts may be made in four ways:

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

McMeans v. Brigano, 228 F.3d 674, 681 (6th Cir. 2000), citing Franklin v. Rose, 811 F.3d 322, 326 (6th Cir. 1987), cert. denied, 532 U.S. 958 (2001). Accord, Whiting v. Burt, 395 F.3d 602, 613 (6th Cir. 2005); Blackmon v. Booker, 394 F.3d 399, 400 (6th Cir. 2004). It is not enough to present the facts giving rise to the federal claim raised in habeas corpus; a petitioner must present the same legal theory to the state courts as is presented to the federal courts in order to preserve the claim. Wong v. Money, 142 F.3d 313, 322 (6th Cir. 1998). Even if a claim is related, but distinct, the claim is nonetheless defaulted. Lott v. Coyle, 261 F.3d 594, 607, 619 (6th Cir. 2001).

In addition, merely "mak[ing] a general appeal to a constitutional guarantee as broad as due

7

process to present the 'substance' of such a claim to a state court[,]" does not sufficiently apprise the state court of a specific federal constitutional guarantee so as to exhaust the claim. Gray v. Netherland, 518 U.S. 152, 162-63 (1996), citing Picard v. Connor, 404 U.S. 270, 271 (1971) and Anderson v. Harless, 459 U.S. 4, 7 (1982). For example, use of the term "ineffective assistance" also fails to alert the state courts of the federal nature of a claim. Baldwin v. Reese, supra.

Where a petitioner has failed to fairly present the factual and legal basis for a federal constitutional issue and where petitioner would be barred from pursuing relief on that claim in the state courts, the petition should not be dismissed for failure of exhaustion in light of the fact that there would be no available state remedies to exhaust. Hannah v. Conley, supra at 1195-96; Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994). Under a longstanding Ohio procedural rule, a claim which could have been but was not raised on direct appeal would be barred from being raised in a delayed appeal or in a petition for post-conviction relief. See, Collins v. Perini, 594 F.2d 592, 593 (6th Cir. 1978). However, the petitioner must then demonstrate cause for failure to fairly present the claims to the state courts and actual prejudice to petitioner's defense at trial or on appeal. Gray v. Netherland, supra at 162; Coleman v. Thompson, 501 U.S. 722, 750-51 (1991); Deitz v. Money, 391 F.3d 84, 808 (6th Cir. 2004).

In his first claim for relief petitioner challenges the sufficiency of the evidence relied upon to convict him at trial. While he raised this claim to the state appellate court, he failed to raise it as an independent claim in his appeal to the state supreme court. Petitioner would be unable to pursue relief on this claim in that court in light of the fact that he could have raised it on appeal or at the first available opportunity to do so, but did not, and now he would be barred by res judicata from doing so. Petitioner having offered no convincing evidence of cause for such default or

8

prejudice arising therefrom, that claim should not be considered in this proceeding.

In petitioner's second claim for relief he asserts that his trial counsel was ineffective was a consequence of counsel's failure to provide the trial court with copies of letters which were alleged to have been written by Mr. Greg Reinke, which petitioner reads as suggesting that petitioner was not involved with the crimes with which he was charged and that the prosecutor and the police pressured him to change his statement so as to incriminate petitioner. Petitioner did not present this claim on direct appeal to the Eighth District Court of Appeals, although he did raise it in his appeal to the state supreme court. In light of the fact that this claim is based upon evidence which is not part of the record, it would not have been appropriate to have raised it on direct appeal, but rather would have been properly raised in a petition for post-conviction relief filed with the trial court under Ohio Revised Code §2953.21. Rust v. Zent, supra at 160; Riggins v. McMackin, 935 F.2d 790, 793 (6th Cir. 1991). Such a petition would now be untimely, and this Court agrees with the respondent that it would be futile to have petitioner file with the state trial court a delayed petition for post-conviction relief, as he would be unable to meet the threshold requirement for filing his petition after so much time has expired. Ohio Revised Code §2953.23 (A). This claim, therefore, is exhausted but procedurally defaulted and, absent a convincing showing of cause and prejudice, this claim is also subject to dismissal on that basis.

Procedural default aside, petitioner's claims for relief would also fail upon merits review.

Turning to merits review, the role of a federal district court in habeas corpus is set forth in Title 28 U.S.C. § 2254 (d) which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the

9

>claim—
>
>>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has held that the clauses "contrary to" and "unreasonable application of" as found in §2254(d)(1) have independent meanings. Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000). A state court adjudication is deemed as being "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court]." A state court adjudication is deemed as involving an "unreasonable application of clearly established Federal law, as determined by the Supreme Court...as of the time of the relevant state-court decision;" "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "if the state court either unreasonably extends a legal principal from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principal to a new context where it should apply." 120 S.Ct. at 1519-1520. In deciphering the "unreasonable application" clause this Court must inquire as to whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

The Sixth Circuit Court of Appeals has interpreted the foregoing as holding that even if a federal habeas corpus court determines that a state court incorrectly applied federal law it may not

10

grant relief in habeas corpus unless it finds that the state court ruling was also unreasonable. Simpson v. Jones, 238 F.3d 399, 405 (6th Cir. 2000), citing Machacek v. Hofbauer, 213 F.3d 947, 953 (6th Cir. 2000), cert. denied, 121 S.Ct. 808 (2001).

In his first claim for relief petitioner challenges the sufficiency of the evidence relied upon to convict him at trial.

The standard for addressing an argument that a conviction is not supported by sufficient evidence was enunciated in Jackson v. Virginia, 443 U.S. 307, 319 (1979), as follows: "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Accord, McKenzie v. Smith, 326 F.3d 721, 727 (6th Cir. 2003); Matthews v. Abramajtys, 319 F.3d 780, 788 (6th Cir. 2003).  In reaching its determination as to the sufficiency of the evidence this Court may not substitute its determination of guilt for that of the factfinder and may not weigh the credibility of the witnesses.  Herrera v. Collins, 506 U.S. 390, 401-402 (1993); Jackson v. Virginia, 443 U.S. at 319, n.13; Brown v. Davis, 752 F.2d 1142 (6th Cir. 1985).

That standard has been modified somewhat by §2254(d) in that questions of sufficiency of the evidence are mixed questions of law and fact upon which a writ may be granted only if the adjudication of the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," §2254(d)(1), or was based upon "an unreasonable determination of the facts in light of the evidence presented" at petitioner's trial, §2254(d)(2). Starr v. Mitchell, unreported, Case No. 98-4541, 2000 U.S.App. LEXIS 25646,*9-*10 (6th Cir. October 6, 2000).

The state appellate court reviewed petitioner's claims that he was convicted without

sufficient proof and held in pertinent part as follows:

> In his first assignment of error, Ogletree contends that the evidence was insufficient to support his conviction for murder because he did not have the requisite intent to kill since he did not participate in the robbery or shooting at Dimitri's. In his second assignment of error, Ogletree argues that his conviction for murder was against the manifest weight of the evidence because there was evidence that he did not intend to kill anyone.
>
> The State's brief fails to adequately respond to either of these arguments. Although it sets forth the standards for analyzing arguments regarding the sufficiency and manifest weight of the evidence, it cites to nothing in the record which would demonstrate that Ogletree had the requisite intent and that his conviction was supported by sufficient evidence. With respect to the weight of the evidence, the State argues only that "the jury was in the best position to determine the credibility and reliability of the testimony" and "the jury in reviewing the evidence***had sufficient evidence to find the appellant guilty of the offenses charged." Again, it cites no evidence in the record nor does it direct us to even a single case to support its argument. Despite the State's inadequate response, our review and research demonstrates that Ogletree's assignments of error are without merit.
>
> A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 390. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
>
> Ogletree was convicted of murder, which is proscribed in R.C. 2903.02(A): "No person shall purposely cause the death of another***." "Purpose" requires an intention to cause a certain result or to engage in conduct that will cause that result. R.C. 2901.22(A).
>
> It was undisputed at trial that Reinke, not Ogletree, shot and killed

Peter Koutsoulias. The State's theory was that Ogletree was guilty of murder as an aider and abettor to Reinke's actions pursuant to R.C. 2923.03, which provides that "no person, acting with the kind of culpability required for the commission of an offense, shall *** aid or abet another in committing the offense."

It is well settled that "a person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts, and intent can be determined from the surrounding facts and circumstances." *State v. Carter* (1995), 72 Ohio St.3d 545, 554. "'A firearm is an inherently dangerous instrumentality, the use of which is likely to produce death.'" *State v. Seiber* (1990), 56 Ohio St.3d 4, 14, quoting *State v. Widner* (1982), 69 Ohio St.2d 267, 270. "[W]here an inherently dangerous instrumentality [is] employed, homicide occurring during the commission of a felony is a natural and probable consequence presumed to have been intended. Such evidence is sufficient to allow a jury to find a purposeful intent to kill." *State v. Johnson* (1978), 56 Ohio St.2d 35.

In *State v. Clark* (1978), 55 Ohio St.2d 257, the Supreme Court of Ohio considered an argument similar to that which Ogletree makes here. In *Clark*, the appellant and his companion drove to a gas station and confronted the attendant. Appellant's companion produced a gun and the attendant gave the men his money. When appellant went into the back room to retrieve money from a money box, his companion shot the attendant. Both appellant and his companion then drove away.

Appellant argued on appeal, as Ogletree does here, that the State had failed to produce evidence of his specific intent to kill and, therefore, the evidence was insufficient to sustain his conviction for murder. The Supreme Court of Ohio disagreed, stating:

"Our examination of the record in the instant cause establishes that appellant participated in the planning and commission of the robbery, and also acquiesced in the employment of a deadly weapon to accomplish this crime. Under these circumstances appellant must have realized that the victim's life would be endangered by the manner and means of performing the act conspired, and accordingly, appellant is bound by the consequences naturally resulting from the furtherance of the conspiracy to commit the aggravated robbery. We therefore hold that the jury had before it sufficient evidence from which to find that appellant possessed a

13

> purposeful intent to kill." Id. at 260.
>
> Here, Reinke testified that he and Ogletree discussed robbing Dimitri's. In addition, the testimony of both Rowe and Reinke established that Ogletree gave Reinke the gun to use in the commission of the robbery at Dimitri's. Both Reinke and Rowe testified further that Ogletree participated in the robbery by riding in the car to the restaurant, waiting for Reinke to return after the robbery, and then driving the get-away car. This evidence, if believed, is sufficient to establish that Ogletree entered into a plan with Reinke to commit a robbery, agreed to the use of a deadly weapon to commit the robbery, and participated in the robbery.
>
> In light of *Clark*, we find this evidence, if believed, sufficient to demonstrate that Ogletree must have known that the victim's life would be endangered by the armed robbery and, therefore, he is bound by the natural consequences of aiding and abetting Reinke in the robbery. Accordingly, we hold there was sufficient evidence to support the jury's finding that Ogletree had a specific intention to kill Peter Koutsoulias.

The state appellate court found the evidence sufficient to prove the elements of the crimes charged. In so doing, the state appellate ruling, which relied overall on state authorities but also applied the analysis set forth in Jackson v. Virginia, supra, neither resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, nor was the decision based upon an unreasonable determination of the facts in light of the evidence presented. That is particularly true in light of the fact that petitioner provided the weapon that ultimately killed the victim. It therefore follows that petitioner's first claim for relief is without merit.

In his second and third claims for relief petitioner contends that he was denied the effective assistance of trial and appellate counsel. As stated previously herein, while petitioner raised the latter claim on direct appeal, he failed to raise his allegations of ineffective assistance of trial counsel during his direct appeal.

A petitioner claiming ineffective assistance of counsel must demonstrate that counsel's conduct was so far below acceptable standards of representation that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment to the United States Constitution, and that such deficient performance so prejudiced the defense as to render the trial unfair. Strickland v. Washington, 466 U.S. 668 (1984). See also, United States v. Bavers, 787 F.2d 1022 (6th Cir. 1985). Disagreement by a defendant with tactics and/or strategy will not support a claim of ineffective assistance, and a petitioner in habeas corpus must overcome a presumption that challenged conduct of counsel was a matter of strategy, Strickland, 466 U.S. at 689. Accord, Wilson v. Yukins, unreported, 1999 U.S.Dist. LEXIS 7644 (E.D.Mich. 1999). The prejudice prong of the test may be satisfied by a showing that counsel's error deprived the petitioner of a fundamentally fair trial which resulted in a verdict lacking in reliability. Kimmelman v. Morrison, 477 U.S. 365 (1986).

The Sixth Amendment right to effective assistance of counsel extends to appellate counsel on direct appeal of a criminal conviction. Evitts v. Lucey, 469 U.S. 387 (1985). The Sixth Circuit Court of Appeals has held that:

> In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions. Strategic choices by counsel, while not necessarily those a federal judge in hindsight might make, do not rise to the level of a Sixth Amendment violation.

McMeans v. Brigano, 228 F.3d 674, 682 (6th Cir. 2000), cert. denied, 532 U.S. 958 (2001) (Citations omitted.). The failure of appellate counsel to assert claims on appeal cannot rise to the level of denial of a constitutional right unless such failure was so ill-advised as to have caused

petitioner to effectively have been without counsel. Burton v. Renico, 391 F.3d 764 (6th Cir. 2004). A petitioner asserting appellate counsel's failure to raise unasserted claims will not be able to establish such a showing even if the unasserted claims are deemed not to have been frivolous, if those claims are without merit. Ibid.

While petitioner procedurally defaulted his claim of ineffective assistance of trial counsel, even if that claim was to be considered by this Court petitioner would be unable to demonstrate that his trial counsel's performance so prejudiced the defense as to render the trial unfair in light of the fact that while unsworn statements purportedly made by Mr. Reinke in a letter could have been used to impeach the testimony he gave which was used to incriminate petitioner, that information could not have damaged Mr. Reinke's credibility any more than the fact that he was the crack-addicted triggerman in the shooting.

As for his claim of ineffective assistance of appellate counsel, under the AEDPA this Court must first determine whether the state court's application of the Strickland standard was objectively unreasonable. Alley v. Bell, 307 F.3d 380, 400 (6th Cir. 2002), quoting Bell v. Cone, 152 L.Ed.2d 914, 122 S.Ct. 1843, 1852 (2002) ("under §2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly.  Rather, [petitioner] must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner."  (Citation omitted.)).

In its opinion denying petitioner's Rule 26(B) application to reopen his direct appeal, the state appellate court initially rejected on procedural grounds petitioner's claims of ineffective assistance of appellate counsel, but also denied the application on the merits of this claim holding in pertinent part:

16

Notwithstanding the [holding that the application to reopen was denied on procedural grounds], Ogletree fails to establish that his appellate counsel was ineffective. "In *State v. Reed*, 74 Ohio St. 3d 534, 1996-Ohio-21, 535, 660 N.E.2d 456, 458, we held that the two prong analysis found in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, is the appropriate standard to assess a defense request for reopening under App.R. 26(B)(5). [Applicant] must prove that his counsel were deficient for failing to raise the issue he now presents, as well as showing that had he presented those claims on appeal, there was a 'reasonable probability' that he would have been successful. Thus, [applicant], bears the burden of establishing that there was a 'genuine issue' as to whether there was a 'colorable claim' of ineffective assistance of counsel on appeal." *State v. Spivey*, 84 Ohio St.3d 24, 25, 1998-Ohio-704, 701 N.E.2d 696.

Additionally, Strickland charges us to "appl[y] a heavy measure of deference to counsel's judgments," 466 U.S. at 91, 104 S.Ct. 2052, 80 L.Ed. 674, and to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. Moreover, we must bear in mind that counsel need not raise every possible issue in order to render constitutionally effective assistance. See *Jones v. Barnes*, (1983), 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987; *State v. Sanders* (2002), 94 Ohio St.3d 150, 151-152, 761 N.E.2d 18. Furthermore, debatable trial tactics and strategies do not constitute a denial of effective assistance of counsel. *State v. Clayton* (1980), 62 Ohio St.2d 45, 402 N.E.2d 1189. After reviewing Ogletree's application, we find that he has failed to demonstrate a "genuine issue as to whether he was deprived of the effective assistance of counsel on appeal" as required by App.R. 26(B)(5).

Ogletree's application essentially argues that appellate counsel was ineffective for only challenging his murder conviction. Absent Ogletree's assertions that the only evidence against him was the testimony of the co-defendants, and that his appellate counsel failed to adequately communicate with him, Ogletree does not demonstrate how challenging his other convictions would have resulted in a successful appeal. "The mere recitation of assignments of error is not sufficient to meet applicant's burden to 'prove that his counsel were deficient for failing to raise the issues he now presents, as well as showing that had he presented those claims on appeal, there was a "reasonable probability" that he would have

>been successful.  *Spivey,* supra."  *State v.  Kelly* (Nov.  18, 1999), Cuyahoga App.  No.  74912, reopening disallowed (June 21, 2000), Motion No.  12367.

Accordingly, the application for reopening is denied.

This Court finds that the state appellate court's conclusion that petitioner's claim that his appellate counsel's only having challenged his murder conviction on direct appeal did not rise to the level of ineffective assistance of counsel was not an objectively unreasonable application of <u>Strickland</u> to the facts of this case, nor was it an unreasonable determination of the facts in light of the evidence presented, particularly considering the strong evidence against petitioner which would undermine petitioner's claims of prejudice.  As a consequence, petitioner's claim of ineffective assistance must also fail.

In light of all the foregoing, it is recommended that the petition be dismissed without further proceedings.


                                        s/DAVID S. PERELMAN
                                        United States Magistrate Judge


DATE:   June 25, 2008



**OBJECTIONS**

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).